UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CRIMINAL CASE NO. 04-03-DCR

§2255 MOTION FILED AS:
CIVIL ACTION NO. 05-486-DCR

UNITED STATES OF AMERICA                               PLAINTIFF

VS.                    **REPORT AND RECOMMENDATION**

ROBERT J. GRANT                                        DEFENDANT

*******

This matter is before the Court upon the motion entitled "Motion to Vacate or
Set Aside Sentence" (DE#28) pursuant to 28 U.S.C. §2255 by the pro se prisoner,
Robert J. Grant. This matter was referred to the Magistrate Judge for initial
consideration and a Report and Recommendation.  Having carefully considered the
entire record, including the Motion (DE#28), Response (DE#41), Reply (DE#44),
and Transcripts of the Rearraignment and Sentencing Hearings (DE#18, 32), the
Magistrate Judge makes the following proposed findings of fact and conclusions of
law:

## I.  Issues Presented

The defendant pleaded guilty, but is now dissatisfied with his sentence. He
alleges that he received "ineffective assistance of counsel" because: 1) defense
counsel allegedly misadvised him with respect to the length and concurrency of his
sentences, 2) defense counsel did not object to the PSI which, according to
defendant, reflected an incorrect "Criminal Category VI", and 3) defense counsel
did not file an appeal.

## II.  Findings of Fact

On June 17, 2003, several United States Marshals executed a parole
violation warrant on Robert Grant at his residence in Wayne County, Kentucky.
Grant went inside his residence with the officers to make a phone call. See DE#41,

Exh. 1, ¶3. The officers observed in plain view 162 marijuana seedlings and various firearms, one of which was later determined to be stolen. Grant admitted to the officers that he was cultivating the marijuana.

On January 24, 2004, a London Grand Jury returned a five-count indictment, charging defendant with drug and firearm offenses.  Specifically, he was charged in Count 1 with knowingly and intentionally manufacturing 100 or more marijuana plants, in violation of 21 U.S.C. §841(a)(1); in Count 2 with being a convicted felon in possession of ten firearms, in violation of 18 U.S.C. §922(g)(1); in Count 3 with knowingly possessing firearms while being a fugitive from justice, in violation of 18 U.S.C. §922(g)(2); and in Count 4 with knowingly possessing a stolen firearm which had been shipped and transported in interstate commerce, in violation of 18 U.S.C. §922(j). Count 5 charged forfeiture of the firearms.

On April 13, 2004, Grant entered a plea of not guilty. The United States filed a notice pursuant to 21 U.S.C. §851 notifying him that he would be subject to an enhanced penalty due to his prior felony drug conviction. See DE#14 (citing a 1996 Michigan conviction for "possessing marijuana with intent to deliver and possession of cocaine"), DE#15. After plea negotiations through counsel, defendant entered into a written plea agreement in which he agreed to plead guilty to Counts 1, 2, and 5. DE#24, Plea Agreement. At the rearraignment hearing on June 1, 2004, the terms of the plea agreement were recited in open court, and Grant indicated that he understood and accepted such terms, including the express waiver of the right to appeal and the right to collaterally attack the guilty plea and conviction. DE#18, p. 6-7; DE#24, ¶8.

Under Count 1, the Presentence Report ("PSR") assigned defendant a base level of 16, with a 2 point enhancement for possession of a firearm. DE#27, p. 7. For Count 2, he was assigned a base level of 24, which was enhanced 4 points for the ten firearms, 2 points because one firearm was stolen, and 4 more points for using the firearms in connection with the manufacture of marijuana. After grouping the offenses, the PSR assigned defendant an adjusted offense level of 34.  DE#27, p. 8. Defendant had a prior felony conviction in 1990 for manslaughter and a prior felony conviction in 1996 for "possession with intent to deliver marijuana" and "possession of cocaine, less than 25 grams". DE#27, p. 10. The PSR designated Grant as a career offender under USSG §4B1.1, which increased his offense level to 37.  He was given a three point reduction for acceptance of responsibility, for a total offense level of 34.

As Grant was on parole when he committed the present offenses, 3 points were added, giving him 9  criminal history points and a criminal history category of "IV". As a career offender, the category was increased to "VI". The sentencing

guideline range for such levels was 262 to 327 months. Defense counsel did not object to the sentencing guideline calculations in defendant's PSI.

At sentencing on September 7, 2004, defense counsel requested that the defendant be sentenced at the bottom of the guideline range and requested that defendant's federal sentences run concurrently with the state sentence in Michigan. The Court sentenced defendant to 262 months on Count 1 and 120 months on Count 2, to be served concurrently, to be followed by an eight-year term of supervised release. The federal sentence was ordered to run consecutively to the state sentence. Finally, the District Judge indicated that in the event the federal sentencing guidelines were found unconstitutional, "the sentence that would be imposed would be identical to the sentence imposed under the Guidelines." DE#32, TR 12, lines 13-17.

## III.  Conclusions of Law

### Statutory Jurisdiction

The federal habeas statute, 28 U.S.C. §2255, provides that: "A prisoner in custody....may move the court which imposed the sentence to vacate, set aside or correct sentence."  The defendant has correctly filed this motion in the court that imposed the federal sentence now challenged. At the time he filed the present §2255 motion, defendant was in federal custody at USP  McCreary, in Pine Knot, Kentucky.

### Applicability of AEDPA, Successiveness

The "Antiterrorism and Effective Death Penalty Act of 1996" (AEDPA) was enacted on April 24, 1996, and its provisions apply to §2255 motions, such as the present one, that were filed after such date. *Penry v. Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001); *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059 (1997); *Williams v. Taylor*, 120 S.Ct. 1495, 1518 (2000). The AEDPA requires courts to examine a §2255 motion to determine whether it is "successive". *In re Sims*, 111 F.3d 45 (6th Cir. 1997)(per curiam). Defendant indicates he has not filed any other §2255 motions, and the record does not reflect any.

### AEDPA One-Year Period of Limitations

A §2255 motion to vacate by a federal prisoner is subject to a one-year period of  limitation that generally runs from "the date on which the judgment of

conviction becomes final" or several other dates not applicable here.  28 U.S.C. §2255, ¶ 6(1); and see, *Clay v. United States*, 537 U.S. 522, 123 S.Ct. 1072, 1074, 155 L.Ed.2d 88 (2003).

In the present case, judgment was entered on September 7, 2004, see DE#23, and Grant did not appeal. For purposes of the AEDPA one-year period of limitations, his judgment was "final" ten days later.  *Sanchez-Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004)("when a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed. In most cases, that period is ten days, pursuant to Fed. R. App. P. 4(b)(1)."). Grant's §2255 motion (DE#28) indicates that he mailed it from prison on September 1, 2005. Under the "mailbox rule" for pro se prisoners, the mailing date is generally deemed to be the date of filing. See *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).  If given the benefit of the mailbox rule, Grant's §2255 motion was timely filed within the one-year period of limitations.


**Express Waiver**


"[W]aiver is the intentional relinquishment or abandonment of a known right ." *United States v. Sheppard*, 149 F.3d 458 (6th Cir. 1998), citing *United States v. Olano*, 507 U.S. 725, 732-35 (1993). Grant, in his written plea agreement, expressly agreed in plain language that he "waives the right to appeal and the right to attack collaterally the guilty plea and conviction." DE#24, ¶8. A defendant may validly waive such rights. See *United States v. Watson*, 165 F.3d 486, 488-89 (6th Cir. 1999)(defendant may validly waive the right to seek collateral relief pursuant to §2255); *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001)(defendant may validly waive the right to challenge his  conviction via §2255 motion, including ineffectiveness claims); *Palermo v. United States*, 101 F.3d 702, 1996 WL 678222 (6th Cir. (Ohio))(enforcing waiver and observing that both the right to appeal and the right to seek collateral relief are rights that may be waived); *United States v. Allison*, 59 F.3d 43, 46 (6th Cir.), *cert. denied*, 516 U.S. 1002 (1995)(defendant may validly waive the right to appeal conviction).    Of course, a defendant's waiver of such rights, like the guilty plea itself, must be knowing, intelligent, and voluntary. See *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970);  *Boykin v. Alabama*, 395 U.S. 238, 242-44, 89 S.Ct.

1709, 23 L.Ed.2d 274 (1969); *Bradshaw v. Stumpf*, – U.S. –, 125 S.Ct. 2398, 162 L.Ed.2d 143,(2005). At Grant's rearraignment hearing, the terms of the plea agreement, including the waiver, were recited in open court. DE#18, TR 8-20. Grant indicated that he had reviewed the plea agreement with counsel and understood its contents, including the waiver, and that he voluntarily gave up such rights and wished to plead guilty. DE#18, TR 6-7, 19-20. Grant has not shown any plausible reason why his express waiver should not be enforced. See, e.g., *United States v. Sykes*, 292 F.3d 495, 498 (6th Cir.), *cert. denied*, 537 U.S. 965 (2002)("informed waivers are valid"); *United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005)(enforcing voluntary waiver by defendant).

The transcript of the plea colloquy shows that the district court complied with Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure, which provides that, prior to accepting a guilty plea, the court must inform the defendant of the appellate-waiver provision in the plea agreement and must determine that the defendant understands it. See *McGilvery*, 403 F.3d at 363 (upholding waiver because after the prosecutor's recitation of the waiver's terms, the court determined that defendant understood the waiver); *United States v.Calderon*, 388 F.3d 197, 198-200 (6th Cir. 2004)(upholding waiver and observing that "there is nothing in the record to suggest that .... defendant misunderstood the scope of his waiver of appellate rights"); and *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996).

Although defendant now claims that his counsel was "ineffective" and that therefore his waiver and plea were not "voluntary", the Sixth Circuit Court of Appeals held in *Ramos v. Rogers*, 170 F.3d 560 (6th Cir.), *cert. denied*, 528 U.S. 847 (1999) that "the trial court's proper plea colloquy cured any misunderstanding he may have had about the consequences of his guilty plea." See also, *Baker v. United States*, 781 F.2d 85, 91 (6th Cir. 1985), *cert. denied*, 479 U.S. 1017 (1986)(a "defendant's plea agreement consists of the terms revealed in open court"). Contrary to Grant's argument that the rearraignment transcript is merely an "evidential" record that is not "conclusive", see DE#44, p. 8, an "[e]ntry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir.1999).

The United States Supreme Court has observed that a defendant's "solemn declaration of guilt carries a presumption of truthfulness". *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); and see, *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004) (pointing out that "[t]he purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be

able to rely on the defendant's sworn testimony at that hearing."). Defendant's waiver should be enforced.

The government has a fundamental interest in the finality of guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). By voluntarily pleading guilty, Grant acknowledged that he admitted the factual basis for the prosecution's case against him. He cannot now "invalidate" his guilty plea by claiming that his counsel misadvised him, particularly when the record shows he was fully and correctly informed in open court regarding the terms of his plea agreement and the possible sentence to be imposed.

Defendant further waived his sentencing arguments by not objecting at sentencing. "If the system is to work and if appellate review is to be meaningful, it is absolutely essential that a defendant raise all objections to the sentence before the sentencing judge in the first instance. For this reason, the law has developed that a failure to object results in a waiver." *United States v. Carr*, 170 F.3d 572 (6th Cir. 1999), quoting *United States v. Cullens*, 67 F.3d 123, 124 (6th Cir. 1995). "This circuit has explicitly held that failure to object to an enhancement operates as a waiver." *United States v. Jarman*, 144 F.3d 912, 915 (6th Cir. 1998); see also, *United States v. Dobish*, 102 F.3d 760, 762 (6th Cir. 1996); and *United States v. Holloway*, 166 F.3d 1215, 1998 WL 833767, *2, Fn. 4 (6th Cir. (Tenn.))(noting that "objections that are not raised at the sentencing hearing are deemed waived").

Although Grant is now dissatisfied with his sentence and seeks to invalidate his waiver and conviction by blaming his counsel for allegedly incorrect advice with respect to the possible sentence, the Sixth Circuit Court of Appeals has held that "[w]hen a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bring a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255." *Davila,* 258 F.3d at 451. The Sixth Circuit Court of Appeals observed that "[t]he  majority of Circuits support the waiver of collateral review in a plea agreement if it is knowingly, intelligently, and voluntarily made except when the ineffective assistance of counsel claims relate directly to the plea agreement or the waiver." *Davila*, 258 F.3d at 451. Although defendant attempts to make such  argument, the record belies his claim.

**Procedural Default**

The United States correctly asserts that defendant did not appeal his sentence or the validity of his waiver, and thus, has procedurally defaulted.  This Court specifically advised defendant of his right to appeal, and such advice included the statement that "if you believe the waiver is unenforceable, you can present that

theory to the appellate court". DE#25. Defendant did not do so. It is noted that Grant did not agree to waive the right to appeal or collaterally attack his sentence. Such provision was initially in his plea agreement, but is crossed out and initialed by the parties. See DE#24, ¶8; and see, DE#18, TR 9-10. However, he did not appeal his sentence.

Although Grant now seeks to bring a collateral challenge to his conviction and sentence, the United States correctly points out that a motion to vacate pursuant to §2255 is not a substitute for direct appeal. *United States v. Frady,* 456 U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir.), *cert. denied*, 124 S.Ct. 585 (2003); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 116 S.Ct. 1701 (1996); *United States v. Duhart*, 511 F.2d 7, 9 (6th Cir.), *cert. dismissed*, 421 U.S. 1006 (1975).

When a defendant has failed to assert his claim on direct appeal and has procedurally defaulted, he may not raise such issue on §2255 unless he shows (1) good cause for his failure to raise such arguments and resulting prejudice, or (2) actual innocence. *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); and see, *Regalado*, 334 F.3d at 528. "Attorney error that amounts to ineffective assistance of counsel can constitute 'cause' under the cause and prejudice test." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001), quoting *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999), citing *Coleman v. Thompson*, 501 U.S. 722, 754, 111 S.Ct. 2546 (1991); and see, *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir. 1993). However, in order to constitute "cause", the attorney error must satisfy the standard for constitutional ineffectiveness established in *Strickland*. Defendant has not done so. Moreover, he does not argue actual innocence.

## Issue 1: Whether Counsel was "Ineffective" With Respect to His Advice About the Possible Sentence

Defendant alleges that his counsel was ineffective, thus rendering his guilty plea involuntary and his waiver invalid. Criminal defendants have the right to effective assistance of counsel under the Sixth Amendment. *Evitts v. Lucey*, 49 U.S. 387, 396-97, 83 L.Ed.2d 821, 830 (1984); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To make out an ineffective assistance of counsel claim, a petitioner must demonstrate objectively deficient performance by defense counsel and resulting prejudice. *Id*. at 687. In the context

of guilty pleas, the Supreme Court defines "prejudice" as a showing that a reasonable probability exists that, but for counsel's errors, defendant would not have pleaded guilty.  *Id.* at 694. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome". *Id.* Grant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance..."  *Id.* at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

At sentencing, the District Judge indicated that "I believe it would be appropriate in this case to sentence him at the bottom end of the guideline range, but I believe it would be appropriate to run the judgment consecutive to the undischarged term in view of the fact that that is a pending matter."  DE#32, TR 9, lines 20-24.  In exercising his discretion, the District Judge decided that the defendant's sentence on Count 1 should run concurrently with his sentence on Count 2, but consecutively with the defendant's undischarged state sentence. DE#32, TR 10, lines12-17. Grant's terms of supervised release on Counts 1 and 2 were made concurrent to each other.  DE#32, TR 10, lines 6-7.

Grant now alleges that his counsel misadvised him that he would get concurrent sentences. Of course, Grant's federal sentences *are* concurrent to each other. Although he complains that his federal and state sentences are not also concurrent, the record reflects that defense counsel asked the Court several times to impose a federal sentence concurrent with the state sentence. See DE#32, p. 8, lines1-3 ("I would further request this Court to run his sentence here concurrent with the Michigan sentence."), and lines 23-24 ("I would just request the Court to sentence him to the minimum and to run his sentence concurrent with the Michigan sentence."). The fact that the district court overruled the request does not render counsel's representation deficient. See, e.g., *United States v. Banks*, 230 F.3d 1360, 2000 WL 1478342, **2 (6th Cir. 2000).

The record reflects that defendant was fully aware that no particular sentence could be promised and that the judge would determine the final sentence. See DE#18, TR 11. Grant was repeatedly advised of this in open court and cannot now contend otherwise. Defense counsel has submitted an affidavit in which he states that he informed the defendant that the state and federal sentences *could* be concurrent, but that it was up to the judge. The mention of a possibility is not the same as guaranteeing a certain result.

Similarly, Grant's claim that counsel told him he would get seventeen (17) years is inconsistent with defendant's own statements in open court, where he acknowledged that he had not been promised any specific sentence. The United

States correctly points out that the District Judge specifically asked Grant in open court "Has anyone advised you that you would receive a specific sentence in exchange for entering into the plea agreement?" Defendant responded "No". DE#18, TR 11. The record further reflects that the District Judge made Grant fully aware that "if the sentence that would be imposed would be more severe than you expect, you would still be bound by your plea agreement and you wouldn't have an opportunity to withdraw it at that time. Do you understand that?" Grant responded "Yes". DE#18, TR 15.

The fact that a defendant, at the time he enters his guilty plea, does not know the precise sentence he will receive does not mean that his plea was "unknowing". *United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990). A defendant's subjective expectation of a lesser sentence is unavailing. See, e.g., *United States v. Crusco*, 536 F.2d 21, 24 (3d Cir. 1976)("courts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence"). Grant acknowledges in his reply that his counsel advised him that he could get a maximum of 262 months. DE#44, p. 10. As this is the actual sentence imposed, the defendant received a sentence consistent with what his attorney advised him and can prove no prejudice under *Strickland*. Defendant has not shown that his counsel was constitutionally ineffective on such basis. As already pointed out, defendant was correctly advised of the parameters of his possible sentence in open court.

**Issue 2: Whether Counsel was Ineffective for Not Objecting to the Criminal History Category in the PSI**

The defendant alleges that his counsel was constitutionally ineffective because he did not object to the PSI, specifically the assigned Criminal History Category of VI. Defense counsel did not object to defendant's designation as a "career offender", see DE#32, TR 3, lines 8-10; DE#32, TR 4, lines 22-24. Such designation was the basis for the Criminal History Category of VI. However, defendant has not shown that his counsel should have objected or that he had any meritorious basis to object.

The United States points out that the Sentencing Guidelines, at the applicable guideline §4B1.1, define the term "career offender" as follows:

"A defendant is career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled

substance offense, and (3) the defendant has at least two prior convictions of either a crime of violence or a controlled substance offense."

See also, *United States v. Williams*, 53 F.3d 769, 770 (6th Cir. 1995).  According to defendant, he was not a career offender because his prior two felony convictions were not "crimes of violence". The Sentencing Guidelines, at §4B1.2(a), provide:

"The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

The record reflects that one of Grant's convictions was for manslaughter, which is certainly a crime of violence. See U.S.S.G. §4B1.2, comment n.1; and see, *United States v. Martin*, 208 F.3d 216 (6th Cir. 2000).

The PSR indicates that defendant's other relevant conviction was a Michigan state conviction (with a sentence of 30 to 48 months years) for "possession with intent to deliver marijuana". DE#27, p. 10. This was deemed a controlled substance offense for purposes of the federal guidelines because U.S.S.G. §4B1.2 provides:

"(b) The term 'controlled substance offense' means an offense under federal or state law, punishable by a term of imprisonment of more than one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."

A conviction for simple possession would not fall within the above definition of the term "controlled substance offense".  See §4B1.2;  see also, e.g., *United States v. Larry*, 134 F.3d 372 (6th Cir. 1997)(discussing definition of "controlled substance offense" under §4B1.2). However, as the defendant's 1996 state conviction for a controlled substance offense concerned a quantity of marijuana

"with intent to deliver" (a form of distribution),[1] the career offender designation appears to have been correct.

The defendant has not shown that his counsel's performance was objectively deficient for not objecting to "career offender" designation or the resulting criminal history. Counsel is not required to make meritless objections in order to avoid a claim of ineffective representation. *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986); *Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998), *cert. denied*, 525 U.S. 935 (1998); *Harris v. United States*, 204 F.3d 681 (6th Cir. 2000).

It is briefly noted that the defendant in his reply (DE#44) recharacterizes this argument as an allegation that the prosecutor failed to comply with 21 U.S.C. §851. He bases such argument on the fact that a notice of deficiency regarding the certificate of service was generated by the Clerk of Courts with respect to the initial notice filing (DE#14) by the United States. The record reflects that the prosecutor filed a correction of this clerical mistake (DE#15). The statute, 21 U.S.C. §851, provides that "[c]lerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." Moreover, the defendant certainly had notice of his own prior felony convictions, and the government's notice specifically referred to the Michigan conviction for "possession with intent to deliver marijuana".

## Issue 3: Whether Counsel was Ineffective for Not Appealing

The defendant contends that his counsel was "ineffective" for not appealing. In *Roe v. Flores-Ortega*, 528 U.S. 470, 477-78, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the United States Supreme Court explained that the test for ineffectiveness based on a failure to file an appeal is the familiar *Strickland* standard. A defendant may show objectively-deficient performance by demonstrating either (1) that the attorney disregarded his instructions to file a notice of appeal, or (2) that the attorney failed to consult with him about an appeal when counsel knew or should have known that he might want to appeal. *Roe*, 528 U.S. at 477-78, 120 S.Ct. 1029. The Supreme Court explained that if counsel has consulted with the defendant,

---

[1] The Michigan statute, M.C.L.A. §333.7401, criminalizes the unlawful possession of marijuana with intent to deliver and provides in relevant part: "(2) A person who violates this section as to: .... (d) Marihuana or a mixture containing marihuana is guilty of a felony punishable as follows: ... (*ii*) If the amount is 5 kilograms or more but less than 45 kilograms, or 20 plants or more but fewer than 200 plants, by imprisonment for not more than 7 years or a fine of not more than $500,000.00, or both."

"counsel performs in a professionally unreasonable manner only by failing to follow the defendant's *express instructions* with respect to an appeal." *Id.* (emphasis added). If defense counsel did not consult with his client, then the court must determine whether the failure to consult indicates deficient performance. *Id.*

In the present case, the defendant had agreed to the terms of his plea agreement and expressly waived his right to appeal the guilty plea and conviction. He was not promised any specific sentence, and acknowledged this in open court. Although defendant's sentence was lengthy, the record nonetheless reflects that defense counsel had obtained a relatively advantageous plea bargain, which included dismissal of several counts. Given that the defendant was on parole and was arrested on a warrant while possessing numerous firearms and 162 marijuana plants in his home, it is doubtful that counsel could have obtained a better deal for him. If defendant had gone to trial and been convicted on all counts, he would have faced the possibility of an even higher sentence.

Grant's unsupported claim that he requested an appeal does not provide a basis for §2255 relief. His defense counsel indicates in his affidavit that he met with the defendant immediately prior to sentencing and told defendant that he did not see any issues to appeal and did not plan to file an appeal. Grant acknowledges that his counsel told him there were no appealable issues and that he did not plan to file an appeal. DE#44, Exh. 1, ¶17. For purposes of *Roe*, "[c]onsultation occurs when the attorney advises the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes." *United States v. Regalado*, 334 F.3d 520, 528 (6th Cir.), *cert. denied*, 124 S.Ct. 585 (2003).

Counsel indicates in his affidavit that, after sentencing, the defendant never requested him to file an appeal. Counsel indicates that the defendant had his phone number, but never contacted him. Grant concedes in his own affidavit that he tried *unsuccessfully* to reach counsel by telephone. DE#44, Exh. 1, ¶18. Grant also claims he then filed his own pro se notice of appeal, see DE#44, Exh. 1, ¶19, although the record does not reflect that any notice of appeal was ever received by the Clerk of Courts.

Under the facts of this case, it appears that counsel did consult with his client about the possibility of appeal. Even if this pre-sentencing consultation is deemed not to be the type of consultation (after conviction) envisioned by *Roe*, the facts of the case do not suggest that counsel should have known defendant would want to appeal. Counsel had obtained a relatively advantageous plea bargain for defendant, the sentence was at the bottom of the sentencing guideline range, there was no apparent basis for downward departure, and the plea agreement

substantially restricted any possible basis for appeal. Hence, the record does not suggest that counsel "knew or should have known that defendant might want to appeal". See, e.g., *Thompson v. United States*, 42 Fed. Appx. 766, 2002 WL 1844332 (6th Cir. (Ohio)).[2] Grant has not shown that his attorney's performance was objectively deficient on such basis. *Roe*, 528 U.S. at 477-78.

The defendant's self-serving allegations that his counsel disregarded his request for an appeal and that the Clerk of Courts did not file his pro se notice of appeal are both refuted by the record. Defense counsel indicates in his affidavit that the defendant did not request an appeal when counsel consulted with defendant immediately prior to sentencing, and defendant has conceded that he did not actually reach his counsel by telephone after sentencing. The record reflects that no pro se notice of appeal was received by the Clerk of Courts. Defense counsel's sworn assertion that his client did not instruct him to file an appeal will be credited over the petitioner's inconsistent and self-serving allegations. Defendant's claim of ineffective assistance of counsel does not meet the first prong of the *Strickland* analysis. Defendant has also shown no prejudice, as he has not shown any probability that, under the relevant circumstances, he would have gone to trial.

## V. No Hearing Required

The government has a fundamental interest in the finality of guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The United States Supreme Court has observed that "[t]o allow indiscriminate hearings in federal post-conviction proceedings....would eliminate the chief virtues of the plea system-- speed, economy, and finality." *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977); *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).

No hearing is required if the petitioner's allegations are refuted by the record, inherently incredible, or are merely conclusions rather than statements of fact. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)(holding that "evidentiary hearings are not required when ... the record conclusively shows that the petitioner is entitled to no relief."); *Arrendondo v. United States*, 178 F.3d 778 (6th Cir. 1999). The allegations in the present §2255 motion concern issues that can

---

[2]It is noted that *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) had not yet been decided at the time, and in any event, the District Judge had indicated that even if the federal guidelines were found unconstitutional, he would impose the same sentence. DE#32, TR 12.

be decided on the record before the Court, and the defendant is not entitled to an evidentiary hearing. *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003); *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001).  The record refutes the allegation that defendant was promised a 17 year sentence by counsel. Defendant himself acknowledges that his counsel told him he could get a 262 month sentence, and the record shows defendant acknowledged in open court that he was not promised any specific sentence. Grant acknowledges that at the sentencing hearing, counsel told him there no appealable issues and that he did not plan to file an appeal. See DE#44, Exh. 1, ¶17. Given that Grant indicates that he never reached his counsel by telephone thereafter, and accepting his contention that he would testify that he mailed his own notice of appeal, which contention is not supported by the record, there is no factual dispute to be resolved at a hearing. *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003)(hearing is not necessary unless there are factual disputes to resolve); *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003).

## VI.  Certificate of Appealability ("COA")

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. §2253(c)(2), and shall indicate which specific issues satisfy the "substantial showing" requirement. See *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2002)(requiring an "individualized determination of each claim...in considering whether to grant a COA"); *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). In *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed2d 542 (2000), the United States Supreme Court further held that "when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue if the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling".

As part of his plea agreement, Grant expressly waived his right to appeal and to collaterally attack his conviction and guilty plea. Defendant did not appeal his sentence or the validity of his waiver. Hence, the procedural recommendation that the prisoner's claims are waived and defaulted is supported by the record and would not be debated by jurists of reason.

Defendant has also made no showing of the denial of a constitutional right. The record shows that defendant was properly and fully informed in open court regarding the terms of his plea agreement and voluntarily chose to plead guilty.

Defendant knew he was not promised any particular sentence and that the District
Judge would impose the final sentence. He received a sentence of 262 months, and
his counsel had advised him that he could receive a sentence of that length. His
counsel has acknowledged that he had advised his client that concurrency of the
state and federal sentences was a possibility, but not a promised outcome. See
DE#41, Exh. 1, ¶4 (indicating that he advised his client that "such decision was in
the discretion of the Court"). Defendant has not shown any reasonable probability
that he would otherwise have not pleaded guilty. Counsel told defendant he saw no
grounds for appeal and would not be appealing. Defense counsel indicates that
defendant did not thereafter contact counsel to request an appeal. Jurists of reason
would not find it debatable that defendant has not made a substantial showing of
objectively deficient performance by his counsel or any resulting prejudice.
*Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Defendant's allegations do not put
forth a debatable issue with respect to any deprivation of constitutional rights, and
reasonable jurists would not debate this matter. Defendant is not entitled to a COA.


Accordingly,

## RECOMMENDATION

It is **RECOMMENDED** that:

1) the "Motion to Vacate or Set Aside Sentence" (DE#28) by the pro se prisoner,
Robert J. Grant should be **DENIED** with prejudice; and
2) a certificate of appealability should not be issued.

Particularized objections to this Report and Recommendation must be filed
within ten (10) days of the date of service of the same or further appeal is waived.
*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 728 F.2d
813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985). Poorly drafted objections,
general objections or objections that require a judge's interpretation should be
afforded no effect and are insufficient to preserve the right of appeal.  See *Howard
v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir. 1991).  A party
may file a response to another party's objection within ten (10) days after being
served with a copy thereof.  Rule 72(b), Fed. R.Civ.P.

This the 11th day of April, 2006.



Signed By:

*J.B. Johnson, Jr.*

United States Magistrate Judge